Per Curiam.

A motion is now made on the part of the defendant to set aside this execution, and to stay all further proceedings against the defendant. He contends that his act of bankruptcy was not complete till the expiration of sixty days after his confinement, or until the first of September, 1801; and that, inasmuch as he was not fixed as Murray’s bail on the 31st of July, 1801, this debt could have been proved under the commission, and that, therefore, the present proceedings are irregular.
This naturally produces an inquiry,
First, as to the time of Blackford’s becoming a bankrupt; and,
Secondly. Whether this demand could have been proved under the commission against him, for if so, it is not denied that he is entitled to relief.
By the first section of the act of congress “ establishing a uniform system of bankruptcy,” the remaining in prison two months, or more, on being arrested for debt, is made an act of bankruptcy. Blackford went to jail on the 1st of July, 1801, and continued there above sixty days; the plaintiff insists that by relation he became bankrupt on the day he went into confinement, and that not being then fixed for Murray’s debt, the present demand was not provable under the commission. The commissioners, it is true, have undertaken to fix that as the day on which he became a bankrupt; but in this, if they have not exceeded their powers, they have at least done a nugatory act which is binding on no one. They are to declare the party a bankrupt ; but no authority is given to ascertain the day of his beaming so. Nor would it have been discreet to have vested such power in them; for their proceedings being somewhat ex parte, and very summary, so important a fact in which many, who had no opportunity of being heard might be in *742 terested, should not, unless absolutely necessary, have been left to be settled by them. Thus, in England, the cominis. sioners being satisfied of the debt, the trading and act of bankruptcy, declare and adjudge, that the party [*590] became bankrupt *generally before the date oi the commission, without a more precise specification of time. Fixing the time even thus far is merely discretionary, and for caution, the English statutes having nowhere directed them to do it; nor is their declaration, as to the period, ultimately binding on any one. Cull. Bank. Laws, 77. Without any doubt, therefore, it is competent to the defendant to controvert this act of the commissioners so far as it respects the fixing on the day of his becoming a bankrupt, and to say that it was not till long after he became so. It becomes necessary, then to determine whether the act of bankruptcy shall relate back to the time of the party’s going to jail, or whether it be only inchoate on the arrest, and not complete till the sixty days expire. English decisions on this point will afford us but little aid, because it is provided by their law, that if a man “ lie in prison two months he shall be accounted a bankrupt from the time of his first arrest21 Jac. I. c. 19, § 1. This i.s thought to be reasonable from a presumption that no man will lie so long in prison without paying his debts or procuring bail, unless he he insolvent at the time of the arrest. Coppendale v. Bridgen, 2 Burr. 819. However strong this presumption, as the legislature of the United States have thought proper not to adopt this provision of the British statutes, we are at liberty to apply a construction of our own. This relation to the moment of committing an act of bankruptcy is considered as one of the hardest cases of which the English law admits, but was thought necessary to secure creditors against fraudulent dispositions of their property by bankrupts, whether by their own acts, or un der color of legal process. Per Lord Hardwicke, in Billion v. Hyde, 1 Ves. 828. It is certain that men in tottering circumstances have too much temptation, as well as oppor *743 tunity, of defeating their creditors of an equal distribution of their effects. But while interposing checks against practices of this kind, we should be careful not unnecessarily to adopt fictions which may operate with severity on other persons as well as the bankrupt: and, therefore where it is impossible any fraud can be practised in creating a debt to injure other creditors, and where the evidence of it is matter of record, and the transaction is evidently bona fide, I would not exclude it from proof under a ■^commission by fictitious relations, provided it [*591] fell due, or the contingency on which it was payable happened, at any time previous to the expiration of the sixty days It is hard that the future industry of a bankrupt, after a fair surrender of his property, should be taxed or burdened with claims which were in a state of maturity at the time of issuing the commission ; and it is equally so on a creditor of this description to be denied any part of his estate, and to be compelled to. trust for pay-' ment to the precarious profits of his subsequent exertions. Without, therefore, prescribing a general rule, which is not necessary, we only say that in this case, the act of bankruptcy should not be regarded as consummated until the lapse of sixty days. We are now to see
Whether the plaintiff’s demand, on this principle, could have been proved against the estate of Blackford.
The 34th section of the bankrupt law provides, “ that the bankrupt shall be discharged from a.11 debts by him due or owing at the time he became bankrupt, and all which were or might have been proved under the commission.” But for this provision the certificate would operate unequally, for if creditors whose debts arose subsequent to the bankruptcy, were permitted to share with those whose demands accrued before, the latter would be exposed to the hardship of having only a dividend under the commission, while the former, beside an equal dividend, would retain a remedy for the residue against the bankrupt himself and his future property. The privilege, therefore of creditora' *744 to prove, and of the bankrupts to be discharged from debts, is wisely made co-extensive and commensurate. 1 Atk. 119. Still difficulties must occur in the application of this rule as to the time when a debt shall be said to accrue. To aid in solving these difficulties, debts have been classed into such as are absolute or certain, that is, payable ceriairily and at all events, and contingent or payable only on the happening of some uncertain event or contingency.
The demand against Blackford is of the latter kind. Murray did not pay the condemnation money, or render himself to the sheriff for the same: Blackford contracted to pay it for him. If the contingency of Murray’s [*592] not paying *the money, or not surrendering himself, had happened at the time of the bankruptcy, the debt as against Blackford could certainly be proved.
■ Without examining-how long after the return of a ca. sa. and of a writ on the recognizance, the bail may surrender, it is sufficient, as it respects the present inquiry, to say, that after the return of non est inventus, on a copias ad satisfaciendum, the condition of the recognizance is broken, and the bail are regarded as fixed in law ; if the principal dies after that day, and before a surrender, they are fixed beyond relief; and were the plaintiff to apply to prove his debt while the bail were in that situation, the assignees would have no right to say that the bankrupt, ex gratia, might yet surrender the principal, and thus defeat the claim. He might with propriety answer that what the bankrupt would do he could not tell, but that until a surrender was made, which he would not compel the bail or his principal to make the possibility of such an event ought not to be alleged against proving an existing demand, which accrued the moment the recognizance was forfeited.
In our judgment, therefore, Blackford was sufficiently fixed as the bail of Murray at the "time of his bankruptcy to confer on the plaintiff a right to prove his debt under the commission against him, and that the fieri facias issued *745 since his discharge must accordingly be set aside with costs.
Motion granted,