MANDELL (ROBINSON v.). See Case No. 11,959.

MANDEVILLE (ALEXANDRIA v.). See Case No. 184.

MANDEVILLE (AULD v.). See Case No. 653.

MANDEVILLE (BANK OF ALEXANDRIA v.). See Cases Nos. 850 and 851.

MANDEVILLE (BAYARD v.). See Case No. 1,132.

## Case No. 9,009.

MANDEVILLE et al. v. COOKENDERFER.

[3 Cranch, C. C. 257.] [1]

Circuit Court, District of Columbia. Dec. Term, 1827.

SLAVERY—ACTION FOR ESCAPE—PRESUMPTION AS TO NEGRO—PRIMA FACIE CASE—GENERAL VERDICT—JUDGMENT ARRESTED—VENIRE DE NOVO.

1. The keeper of a stage-office is liable to the owner of a colored slave, for damages sustained by the running away of the slave, if he suffers him to take passage and depart in the stage-coach, without the consent of the owner.

2. Color is primâ facie evidence of slavery.

3. Every person, who undertakes a business in which the public is concerned, is bound by the general law of the land, to conduct that business with reasonable care; and if, for want

[1] [Reported by Hon. William Cranch, Chief Judge.]

of such care in such business, another person suffer damage, the conductor of such business is liable to make good such damage.

[Cited in Lowe v. Stockton, Case No. 8,567.]

4. Every negro is, by a rule of evidence well established in this part of the country, primâ facie, to be considered as a slave, and the property of somebody; and he who acts, in respect to him, as if he were a free man, acts at his peril; and the burden of proof is on him to show that the negro is not a slave; or at least to show such circumstances as will rebut the presumption arising from color.

5. If the keeper of a public stage-office send a negro away in the stage-coach, it is primâ facie evidence of carelessness.

6. In such a case it is not necessary to aver in the declaration, any special law or custom, to raise a duty in the office-keeper, not to send away a negro slave without the leave of his master or owner.

7. Where it is necessary to set forth the duty, the averment must relate to the time of doing the act which is supposed to be a violation of that duty.

8. The words "wrongfully and improperly" are not alone sufficient to show, that the act to which they are applied, was unlawful or actionable; but the facts and circumstances, which make the act unlawful or actionable, must be set forth.

9. If there be a general verdict for the plaintiff, and one of the counts in the declaration be bad, the judgment must be arrested; but, if there be a good count in the declaration, a venire facias de novo, may be awarded.

This was an action upon the case against [Thomas Cookenderfer] the keeper of a public stage-office in Washington, for suffering the plaintiffs' slave to take passage in the stage-coach from Washington to Baltimore, whereby the slave escaped; and the plaintiffs [Mandeville and Larmour] were put to great trouble and expense in recovering him. At the trial, in May term, 1827, THE COURT (nem. con.) at the prayer of the plaintiffs, instructed the jury in effect, that color was prima facie evidence of slavery; and that if they should be satisfied by the evidence that the plaintiffs' slave was a colored man; and that the defendant, without authority of the plaintiffs, suffered him to take a seat in the stage-coach for Baltimore, and that he went off in the coach, and thereby escaped, the defendant is liable to the plaintiffs in this action for the damages which the plaintiffs may have sustained by reason of such escape. The jury found a general verdict for the plaintiffs for $200 damages.

The defendant's counsel moved in arrest of judgment, and contended that the second count was bad.

1. The first count states that the plaintiffs were owners of a negro man, a slave for life, called Richard Bunbury; and that the defendant, on the 28th of September, 1825, was the "keeper and superintendent, and had the management and control of a stage-office, for the entry of lawful passengers, traveling from the city of Washington, in the said county, to Baltimore," &c., "and whereas by the law and the custom of the county aforesaid, superintendents, keepers, and managers of stage-offices, are bound not to take any slave for life, belonging to any citizen or citizens of said county, out of the same, or to take any such slave or slaves, out of the district aforesaid, in any stage, carriage, or other vehicle, or in any wise to suffer or permit, or aid in suffering or permitting any such slave or slaves, to have passage or conveyance in any line of stages, coach, stage or other conveyance under their or his control, management or superintendence, by or through which any such slave or slaves, may be carried out of the district aforesaid, without proper permission or authority from the owner of such slave or slaves; yet the said Thomas Cookenderfer," (the defendant) "not regarding his duty in that behalf," &c. "took so little and such bad care of, and conducted himself so carelessly and improperly in the management of the said line" "of stages," "and the office of such stage-line, in the said county, that the said" "slave" was by and through the carelessness, misdirection, mismanagement, and improper conduct of said defendant, permitted, suffered, and allowed, and by him unjustly authorized and enabled to take a seat and passage in the said line of stages, or one of the stages of the said line on the 28th of September, in the year 1825, at the county aforesaid, and the said "slave" "to be therein and thereby carried, and taken out of, and beyond the county and district of Columbia, aforesaid, and out of, and from the control of the said plaintiffs, and thereby caused the said plaintiffs to pay" &c., a large sum of money, namely, $500, for recovering him, and to lose his services, &c.

2. The second count, "and whereas the said defendant Thomas Cookenderfer, was, on the 28th day of September, in the year 1825, at the county aforesaid, the keeper of the stage-office, for the line of stages which runs to and between, and on the route to and between, the city of Baltimore in the state of Maryland, from the city of Washington, in the county of Washington, and had, on the day and year aforesaid, and at the county aforesaid, the control and management of the same, and the superintendence of passages taken and entered on the books and way-bill, for and in the said line, route, and stages, from said city of Washington, and it is his duty as such superintendent, not to permit or suffer, or in any wise aid any slave for life, owned by any citizen or citizens, in said county and district, or any such slave owned by any citizen or citizens within said district, to make and effect his escape from the ownership, control of, or servitude to his lawful master or masters, by means of, or through the said stage-line, or stage-office, or by, or in any manner or mode of conveyance under and within his control, as superintendent of such line of stages, or stage, belonging or connected to, or with the said line or route, or office. Nevertheless the said Thomas not regarding his duty aforesaid, wrongfully and improperly, did, on the 28th day of Septem-

ber, in the year 1825, at the county of Washington aforesaid, suffer and allow, and give permission to, and aid the said negro slave, Richard Bunbury, the property, before and at that time, of said plaintiffs, to take passage and conveyance in the said line or route of stages, or one of the stages of the said line or route, from Washington city, in the county of Washington, to, or on the route to Baltimore, in the state of Maryland, and to be therein conveyed and carried out of the district and county aforesaid, and out of the reach and control of said plaintiffs, whereby the said plaintiffs lost, and were deprived of the use, labor, services, and profits of the said slave," &c., "and also caused the said plaintiffs to pay" &c., "money for the recovery of said slave," &c.

Morfit & Swann, for plaintiffs.
Mr. Key, for defendant.

CRANCH, Chief Judge (THRUSTON, Circuit Judge, absent). It is moved in arrest of judgment, that one, if not both counts of the declaration are bad; and as the verdict is general, if either count be bad, the judgment must be arrested.

The first count sets forth the law and custom of the county of Washington, in relation only to the slaves of citizens of that county; and as the count does not aver the plaintiffs to be citizens of that county, the case is not within the law and custom set forth; and therefore the plaintiffs' case derives no support from that allegation. But the averment of the law and custom of the county may be considered as surplusage; and if, without that averment, there be enough left in the count to make the defendant liable, the count may be good.

The count avers that the defendant was, at the time, &c., the keeper, and had the management and control of the stage-office of a line of stages for passengers passing in such stages from Washington to Baltimore; that the defendant, not regarding his duty in that behalf, took so little care of, and conducted himself so carelessly and improperly in the management of his said office that the plaintiffs' negro slave, the property of the plaintiffs, was by the carelessness, misdirection, and mismanagement of the defendant, permitted, suffered, and allowed, and unlawfully and unjustly authorized, and enabled to take a seat in one of the stages of that line, and to be thereby carried and taken out of the District of Columbia, and out of the control of the plaintiffs, whereby they sustained damage.

Every person who undertakes a business, in which the public is concerned, is bound, by the general law of the land, to conduct that business with reasonable care; and if, for want of such care in such business, another person suffer damage, the conductor of such business is liable to make good such damage. If the keeper of a stage-office carelessly send away my goods, without my authority, or send them in a wrong direction, so that I

suffer damage through his carelessness, he is liable to make compensation for my loss, although he did not know the goods to be my property. Every negro is, by a rule of evidence well established in this part of the country, prima facie to be considered as a slave, and the property of somebody; and he, who acts in regard to him as if he were a free man, acts at his peril, and the burden of proof is upon him, to show that the negro is not a slave, or, at least, to show such circumstances as will rebut the presumption arising from color. If the keeper of a stage-office, therefore, send a negro away in the stage-coach, it is prima facie evidence of carelessness. In such a case, I do not think it necessary that the plaintiff should, in his declaration, aver any special law or custom, to raise a duty in the office-keeper not to send away a negro slave, without the leave of his master or owner. After striking out of the present count, the averment of the special law and custom of the county of Washington, I think there is enough left in the count to maintain the action.

In the second count, the duty of the defendant, the violation of which is the subject of complaint, is averred to be a duty existing at the time of the complaint, not at the time of the act of sending away the slave. The plaintiffs' case is, therefore, not aided by that averment; and if there be not enough left in the count to show a duty on the part of the defendant, the plaintiffs cannot recover on that count. If that averment be stricken out, the substance of the count is. That the defendant was, on the 28th of September, 1825, the keeper of the stage-office, &c., and had the control and management of the same, and of the passages taken, &c. Nevertheless, the said Thomas Cookenderfer (the defendant) wrongfully and improperly did, on the 28th of September, 1825, at, &c., "suffer and allow, and give permission to, and aid the said negro slave, Richard Bunbury, the property, before and at that time, of the plaintiffs, to take passage in one of the stages," &c., "and to be therein conveyed and carried out of the district aforesaid, and out of the reach and control of the plaintiffs, whereby the plaintiffs lost the service of the said slave," &c., "and sustained damage," &c.

This count does not aver negligence, or carelessness of the defendant, in his office or business; nor that the aid given to the slave, was knowingly, or unlawfully given, nor without the consent of the owners; nor does it show any cause of action, unless the words "wrongfully and improperly" can be considered as a sufficient averment of the wrong. But these epithets have never been considered of themselves as sufficient to show an act to be unlawful, or actionable, which would not appear to be so without those epithets. All the circumstances must be shown, that cause the act to be unlawful, so that the court may judge whether it be unlawful or not.

I am therefore of opinion, that the 2d count

is bad, and not aided by the verdict; and, therefore, that the judgment must be arrested.

MORSELL, Circuit Judge, concurred.

After this opinion was given, Mr. Morfit, for plaintiffs, as there was one good count, moved for a venire de novo. Mr. Key objected, and questioned the power of the court to grant it after judgment arrested. If it be a matter of discretion, the court will not grant it in so hard a case. The suit ought to have been brought against the stage-owners, not against their office-keeper.

Mr. Morfit cited the case of Semmes v. Sherburne [Case No. 12,655], in this court, at December term, 1824, and December term, 1825 [Id. 12,656], and Turner v. Foxall [Id. 14,255], in this court at June term, 1819, in which cases, he says, this court ordered a venire facias de novo; but it does not appear in the report. Mr. Morfit also cited Eddowes v. Hopkins, 1 Doug. 376, and Grant v. Astle, 2 Doug. 730, 2 Tidd, Prac. 831, and Harwood v. Goodright, Cowp. 89. But see Trevor v. Wall, 1 Term R. 151; a court of error cannot award a venire de novo; Holt v. Scholefield, 6 Term R. 694, 695, where the court refused a venire de novo, in slander, and Lawrence, J., said "that the plaintiff ought not to be at liberty to award by this judge's notes in the case, because the evidence applied as well to the bad as to the good counts." Harrison v. King, 1 Barn. & Ald. 161; Holloway v. Bennet, 3 Term R. 448; Lee v. Muggeridge, 5 Taunt. 36; 1 Archb. K. B. Prac. 195; Anger v. Wilkins, Barnes, Notes Cas. 478; Smith v. Haward, Id. 480; Williams v. Breedon, 1 Bos. & P. 329; Spencer v. Goter, 1 H. Bl. 78.

CRANCH, Chief Judge. The judgment in this case having been arrested because one of the counts was bad, and the jury rendered a general verdict for the plaintiffs for $200 damages, Mr. Morfit moved for a venire de novo; evidence having been offered upon both counts, and cited Eddowes v. Hopkins, 1 Doug. 376, and Grant v. Astle, 2 Doug. 722, 730.

Mr. Key, contra, cited Chit. Pl. 394; 2 Saund. 171b; Starkie, Sland. & L. 418, 419; Hopkins v. Beedle, 1 Caines, 347; Lyle v. Clason, Id. 581; Livingston v. Rogers, Id. 588; Queen v. Corporation of Helston, 10 Mod. 202, 203; Bebee v. Bank of New York, 1 Johns. 535, 555, 576; Morgan v. Bliss, 2 Mass. 112; and contended, that the general rule is, that a venire de novo cannot be granted on account of a general verdict for the plaintiff, where some counts are good, and others bad; and that the case of slander is an exception to that general rule.

Chitty, in the page cited (namely volume 1, p. 394), says that in such a case, "the judgment will be arrested in toto, and no venire de novo awarded;" and for this he cites Onslow v. Horne, 3 Wils. 185; 2 Saund. 171d; and Grant v. Astle, Doug. 722, 730.

In the case of Onslow v. Horne, which was an action of slander, no question was made respecting a venire de novo; and the court expressly waived the question whether either of the counts was good. The only question was, whether one of the two counts upon which the verdict was given, was a bad count; for if so, it was admitted that the judgment must be arrested. The court, being of opinion that one of the counts was bad, arrested the judgment. No motion was made for a venire de novo. Why it was not made does not appear; perhaps it was because the counsel for the plaintiff doubted whether either event was good; or it might be, that, with Mr. Starkie, he thought the action of slander was an exception to the general rule that where judgment is arrested because the verdict is general, and some counts are bad, and some good, and evidence has been given upon any of the good counts, a venire facias de novo will be awarded. The case however is not authority to show that in such case the general principle is, · that a venire facias de novo cannot be awarded in any form of action. It may be observed, however, that Mr. Chitty does not say that the court cannot, but that it will not, grant a venire de novo in such a case; evidently alluding to the will or discretion of the court, and not to its power.

The next authority to which Mr. Chitty refers is 2 Wms. Saund. 171b, in the notes, where Sergeant Williams says, that in such case the judgment shall be arrested and no venire de novo awarded; for which he cites Trevor v. Wall, 1 Term R. 151; Hancock v. Haywood, 3 Term R. 435; and Holt v. Scholefield, 6 Term R. 691. He admits, however, that where evidence has been given only on the good counts, the court has permitted the verdict to be amended by the judge's notes; for which he cites Eddowes v. Hopkins, 1 Doug. 376; Williams v. Breedon, 1 Bos. & P. 329; and Spencer v. Goter, 1 H. Bl. 78.

The case of Trevor v. Wall, 1 Term R. 151, was error on a judgment of an inferior court, in Shropshire, in an action of assumpsit. The judgment was reversed because one of the counts, (namely, for money had and received,) did not state that the money was had and received within the jurisdiction of that court. The defendant in error contended, that if the judgment should be reversed for that error, the court would award a venire de novo; but the court said, there is no instance of a court of error granting a venire de novo, when the proceedings originated in an inferior court; and the reason for that decision is very strong; for the judgment was reversed, because it did not appear that the court had jurisdiction of one of the causes of action for which the damages were given; and it would be absurd to direct the court below to try again a cause of which they had not jurisdiction. However that may be, the reason given for refusing it,

shows that the case was an exception to the general rule, and that if it had not been a judgment of an inferior court, a venire de novo might have been granted. So far is that case from supporting the principle which it is adduced to support, that it is a strong case in opposition to it.

The case of Hancock v. Haywood, 3 Term R. 435, was an action of assumpsit, and is cited by Mr. Chitty, only for the dictum of Judge Buller, that, "on a writ of error, where one count appears bad, and the verdict is entered generally on all the counts, the court must reverse the judgment in toto, since they cannot see on which of the counts the damages were given." No question was made as to a venire de novo. The case of Holt v. Scholefield, 6 Term R. 691, was an action of slander, and does not fix any general principle, unless it be that in actions of slander, the court has a discretion to grant or refuse a venire de novo where one count is bad, and the verdict for the plaintiff is general. The words of the reporter are, "The court were of opinion that there should not be a venire de novo; and that, as the damages were entire, the judgment must be arrested in toto." And the reason stated by Lawrence, J., why the plaintiff was not permitted to amend the verdict by the judge's notes, was, that the evidence applied as well to the bad counts, as to the good counts. If this case is to be considered as deciding that the court cannot grant a venire de novo in an action of slander, where there is a bad count, and a general verdict for the plaintiff, still it does not establish a general principle, but an exception to a general principle. If it is to be considered only as a particular instance of the exercise of the discretion of the court, it is an admission of the power of the court to grant the writ in such a case.

The case of Eddowes v. Hopkins, 1 Doug. 376, was an action of assumpsit, and is cited by Mr. Chitty, to show that the verdict may be amended by the judge's notes, where some of the counts are bad, or inconsistent, and the verdict for the plaintiff has been general. In that case, Buller. J., said, there was this distinction: that if there was evidence, at the trial, upon such of the counts as were good and consistent, a general verdict might be altered from the notes of the judge, and entered only on those counts; but that if there was any evidence which applied to the other bad or inconsistent counts (as, for instance, in an action for words, where some actionable words are laid, and some not actionable, and evidence given of both sets of words, and a general verdict,) there the postea could not be amended because it would be impossible for the judge to say on which of the counts the jury had found the damages, or how they had apportioned them: That in such a case the only remedy is by awarding a venire de novo. He mentioned a case where Sir Fletcher Norton had moved for and obtained a venire de novo in a case of that sort. "The rule for amending the verdict was made absolute, and the rule to arrest judgment was discharged."

The report refers to the case of Anger v. Wilkins, Barnes, Notes Cas. 478, in which a venire de novo was granted, "according to an ancient rule of court," "that plaintiff might sever his damages." The same point was also decided in the next year, in the case of Smith v. Haward, Id. 480.

The case of Williams v. Breedon, 1 Bos. & P. 329, was an action of trespass. A general verdict was given for the plaintiff upon two counts, one of which was bad; but the verdict was amended by the judge's notes, it appearing that the damages were calculated upon the evidence applicable only to the good count, although some evidence was given on the bad count.

The case of Spencer v. Goter, 1 H. Bl. 79, was an action for slander. The court said they could not alter a verdict unless it clearly appeared upon the face of it, that the alteration would be agreeable to the intention of the jury, and that the proper remedy in that case was a new trial. The verdict in that case was contrary to the instruction of the judge.

These are all the cases cited by Sergeant Williams, in support of the position, that "no venire de novo will be awarded."

Mr. Chitty also refers to the case of Grant v. Astle, 2 Doug. 722, which was error from the common pleas, on a judgment in an action of assumpsit. Lord Mansfield, after lamenting the rule that judgment must be arrested upon a general verdict for the plaintiff, if one of the counts be bad, said, "But in civil cases, the rule is now settled, and we have gone as far as we can, by allowing verdicts in such cases, to be amended by the judge's notes. That might have been done, in this instance, in an earlier stage of the proceeding, but cannot now after judgment." Buller, J.: "The court may grant a venire de novo; a good cause of action is shown in the first count, and that it is true, appears by the verdict; but the plaintiff has also had damages assessed to him on a count in which he has not shown any cause of action. The court, under these circumstances, may send the case back to have damages assessed only on that count on which, in point of law, he is entitled to recover." "The court there said, there was no doubt but a venire de novo might be granted by a court of error; that it had been done by the house of lords, and was not a new practice; for upon inquiry made by this court, in a late case from Ireland, a great many instances had been found." A venire de novo was awarded.

These are all the cases cited by Mr. Chitty, in support of the position that a venire de novo shall not be granted where the verdict for the plaintiff is general, and one of the counts is bad and the others are good.

The next authority cited by Mr. Key is Starkie on Slander and Libel (sections 418,

419), where, after having stated that judgment will be arrested upon a general verdict for the plaintiff, in an action of slander, if there be one bad count, he says:—"It is said to be the practice in the court of common pleas, to award a venire de novo where judgment is arrested in such a case, upon payment of costs, in order that the plaintiff may sever his damages. But in the case of Holt v. Scholefield, in the king's bench, a venire de novo was refused. In the case of Beavor v. Hides, 2 Wils. 300, Bathurst, J., expressed an opinion, that where the words in one count were not actionable, yet the postea might be amended, and a verdict, as to those words, entered for the defendant, upon the judge's certificate that no evidence was given of them at the trial. But Lord Camden said it would be very dangerous, after a verdict of twelve men recorded by the court, to refer to the judge's notes in order to alter it; and he thought there was no precedent of such a case, and that the verdict could not be varied. The general practice, however, is where general damages have been given, and it appears that the plaintiff is entitled to recover upon one count, though not upon others, either to amend the postea, which is done where it clearly appears that no evidence was given upon the defective counts, or by awarding a venire facias de novo where such evidence has been given, in order that the plaintiff may ascertain to what damages he is entitled, for so much of his cause of complaint as will support damages. It does not distinctly appear upon what principle actions for slander form an exception to the general rule."

The counsel for the defendant, in the present case, has supposed that the general rule, to which actions for slander form an exception in the opinion of Mr. Starkie, is, that a venire de novo will not be awarded where judgment is arrested upon a general verdict for the plaintiff, where one of the counts is bad and others are good. But it is impossible that that should be the general rule alluded to by Mr. Starkie; because the only case in which a venire de novo has been refused, under such circumstances, is a case of slander, namely, the case of Holt v. Scholefield, 6 Term R. 691. If that case established a general rule, it was that a venire de novo should not be awarded in actions of slander; it is impossible, therefore, that actions of slander should form an exception to that rule. But the rule, to which Mr. Starkie thought actions of slander formed an exception, was the "general practice" which he had just mentioned in the preceding sentence, namely, to amend the postea, or to award a venire de novo. The word "however," in the first line of that sentence, shows that what he is about to say is in opposition to what he had just before related, which was the dictum of Lord Camden, that it would be dangerous to alter verdicts by the judge's notes; and the case of Holt v. Scholefield, in which

a new venire was refused in an action of slander, which case, it is clear, Mr. Starkie thought excepted actions of slander from the general rule, notwithstanding the practice which, in such cases of slander, prevailed in the common pleas, as stated in the two cases cited from Barnes's Notes, 478, 480. The authority of Starkie, therefore, does not support the doctrine of the defendant's counsel, but is very strong against it.

The cases of Hopkins v. Beedle, 1 Caines, 347, Lyle v. Clason, Id. 583, and Livingston v. Rogers, Id. 588, were also cited by the defendant's counsel, to show that the rule for granting a new venire is confined to cases of slander; but there is nothing in those cases to justify such an inference. The two first, it is true, were cases of slander; but the third was an action upon assumpsit, in which Judge Kent, in delivering the opinion of the court, said:—"As there is one good count in the declaration, the plaintiff may, if he choose, on the first ground sue out a venire de novo." In neither of the cases is there the least intimation that the rule is confined to actions for slander.

The cases of Queen v. Corporation of Helston, 10 Mod. 202, Bebee v. Bank of New York, 1 Johns. 535, 555, 576, and Morgan v. Bliss, 2 Mass. 112, were cited by the counsel of the defendant, to show that a new trial will not be granted for mistake of counsel. But it does not appear to be a mistake of counsel in this case, but an error of the jury, in giving a general verdict. This they had a right to do; and it was not in the power of the plaintiff's counsel to prevent it, unless by withdrawing the bad count, or entering a nolle prosequi upon it. A motion for a venire de novo is a motion for a new trial upon matter appearing in the record, and was anciently the only form of moving for a new trial. It is a motion to the discretion of the court, who will not grant it unless they see that the plaintiff has a good cause of action upon the record, and supported by evidence at the trial.

Upon consideration of all the cases cited, we think the general practice is, (as stated by Mr. Starkie,) in all the forms of action, (not excepting the action for slander,) "that where general damages have been given, and it appears that the plaintiff is entitled to recover upon one count though not upon others, either to amend the postea, where no evidence was given on the defective counts, or by awarding a venire facias de novo where such evidence has been given." In all the cases the motion is to the discretion of the court, and we see no reason for excluding the action of slander from that discretion; but upon this point it is not necessary, in the present case, to decide.

It has been said in argument that this is a hard case, because brought against the office-keeper, and not against the owners of the coach, who received the benefit of the fare; and therefore the court, in its discretion, ought not to award a new venire. But if the

suit had been brought against the owners, and judgment recovered against them, they might bring their action against the office-keeper, by whose negligence the damage arose; so that a judgment in the present case may prevent circuity of action.

The court, therefore, will award a new venire, upon payment of all costs up to this time. Venire de novo awarded.

[Upon the new trial the jury awarded $200 damages to the plaintiff, subject to the opinion of the court whether the action would lie against the office-keeper, the agent of the coach owners. The court decided that the action would not lie, and directed the entry of a non pros. Case No. 9,010.]